IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTINA M. DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-21-09-JFH-SPS |

REPORT AND RECOMMENDATION

The claimant Kristina M. Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 38, 211). She completed high school and has previously worked as a cleaner and filler on a bottling line (Tr. 62, 240). The claimant alleges that she has been unable to work since January 2, 2008, due to rheumatoid arthritis, diabetes, scleroderma, lupus, anxiety, and depression (Tr. 239).

## Procedural History

On February 26, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434,[3] and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Christopher Hunt conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 20, 2019 (Tr. 16-31). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

---

[3] The claimant's date last insured is September 30, 2014 (Tr. 18).

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), except she could only occasionally climb stairs/ramps, stoop, kneel, crouch, crawl, and reach or work overhead, and she could not climb ladders/ramps/scaffolds or have strict production standards. Additionally, he found she could have frequent contact with coworkers and supervisors, but only occasional contact with the general public, and that the jobs should have a reasoning level of "3" or below (Tr. 22). The ALJ then concluded that the claimant could return to her past relevant work as a filler. Alternatively, he found that she was not disabled because there was other work in the economy that she could perform, *e. g.*, laundry sorter, folder, and pricer (Tr. 29-31).

## Review

The claimant contends that the ALJ erred by: (i) failing to order one or more consultative examinations; (ii) improperly evaluating the evidence at steps two and three, including improperly inserting his own opinion for medical expertise; (iii) failing to account for all her impairments at step four; (iv) failing to properly evaluate her subjective symptoms, including improperly weighing her daily activities and noncompliance; and (v) failing to support her RFC with substantial evidence. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ found that the claimant had the severe impairments of obesity, major depressive disorder, diabetes mellitus with neuropathy and diabetic

-4-

arthropathy/osteoarthritis, and rotator cuff repair, along with the nonsevere impairments of mild degenerative facet joint disease, tinea, and hypertension (Tr. 18-19). Additionally, he found she had the non-medical determinable impairments of lupus, hand problems, and hip impairment (Tr. 19). The relevant medical evidence reflects that the claimant underwent a rotator cuff repair surgery on August 19, 2009 but did well following the procedure (Tr. 749). The claimant's treatment notes reflect the above-mentioned diagnoses, including uncontrolled diabetes at times and uncontrolled hypothyroidism (Tr., *e. g.*, 307, 346, 413, 415, 437, 640, 693-694). The claimant presented to her treating physician on May 10, 2017 for a major depressive episode, and was referred for outpatient therapy at that time (Tr. 308).

X-rays of the claimant's hands, knees, back, and other joints were generally unremarkable (Tr. 361-363, 711-716). An x-ray of the lumbar spine on February 27, 2018, revealed mild degenerative facet joint disease at L5-S1, but no other acute or significant interval changes (Tr. 561). In July 2018, the claimant complained of pain but was noted to have normal range of motion in the spine, shoulders, elbows, wrists, and knees (Tr. 699).

Dr. Christopher Sudduth conducted a physical examination of the claimant on July 7, 2018 (Tr. 628-638). He noted that she presented with a cane but was able to walk without it, with an asymmetric, steady, slow, antalgic, limping gait (Tr. 631). He stated that the cane appeared medically necessary (Tr. 631). He noted also that she was unable to squat and rise from that position, could rise from a seated position without assistance, but had some difficulty getting up and down from the exam table. Additionally, she was unable to heel/toe walk or stand/hop on either foot (Tr. 631). His impression was that the claimant

was able to use a cane with ambulating, and she could ambulate without it, although it appeared medically necessary given her gait. He further noted, *inter alia*, decreased range of motion of the lumbar spine, along with a positive straight leg raise test. He noted that he would refer to her for a psychiatric evaluation as to her depression (Tr. 632).

Dr. Judy Marks-Snelling, D.O., reviewed the record and determined that the claimant could perform light work, with standing/walking up to four hours in an eight-hour workday, and that she could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and never climb ladders/ropes/scaffolds (Tr. 84-85). Upon review, Dr. Suzanne Robert, M.D., made nearly identical findings (Tr. 118-120). Dr. Lisa Swisher, Ph.D., reviewed the claimant's mental health record and found that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 88). Upon review, Dr. Ryan Jones, Ph.D., agreed (Tr. 122).

At the administrative hearing, the claimant testified that she spends three to four hours in the evening drawing most days, and that she attends traditional stomp dances once a month (Tr. 44-46). She testified that she takes medication for her rheumatoid arthritis and had lost some teeth and hair as a result, and that medication helped with her neuropathy, but that her diabetes was uncontrolled (Tr. 47). She stated that she lays down about an hour and a half a day, that she can sit for ten minutes at a time, and that standing and walking are painful after more than ten minutes (Tr. 51). She stated that she used a cane, but that it had been stolen two months previously, and her dad had made her a makeshift one out of a stick that she used every day but did not bring it to the hearing because "it didn't look appropriate" (Tr. 53-54). She testified that her medication for depression

helped her to relax and be calm as well as to sleep, but that it did not entirely eliminate her depression because it was connected to her physical situation and financial needs (Tr. 57-58).

In his written decision at step four, the ALJ thoroughly summarized the claimant's hearing testimony, as well as nearly every medical record available reflecting both physical and mental impairments. As to Dr. Sudduth's opinion, the ALJ specifically noted his numerous findings and conclusions, but stated that he was not persuaded by Dr. Sudduth's opinion that the cane was medically necessary because it was not consistent with the record, when that same month x-rays had revealed unremarkable bilateral knees and only mild tenderness to palpation, as well a concurrent examination with normal range of motion findings of the lumbar spine and knees (Tr. 26). Further, he noted that the claimant had a wound on her foot during the examination that Dr. Sudduth had not noted (Tr. 26). The ALJ further noted inconsistencies between the claimant's allegations in the record, including (i) her very sparse working history prior to the alleged onset date, (ii) her hearing testimony that her medications caused hair and tooth loss when she denied such at appointments, (iii) her testimony that she was on a medication that she was no longer taking, and (iv) her testimony that her cane was prescribed even though such is not reflected in the record, as well as the fact she says it was stolen two months prior and she did not bring her new cane (made out of a stick) because it did not look right (Tr. 27-28). The ALJ, as relevant, noted the claimant's documented diabetes and neuropathy, as well as her hypothyroidism, but that she had been noncompliant with treatment and nevertheless had normal range of motion, as well as normal motor, sensory, and coordination (Tr. 28).

Noting her history of rotator cuff surgery, he found overhead reaching limitations to be appropriate, and further noted the claimant's obesity even though it had not been alleged (Tr. 28). The ALJ then stated that he was not persuaded that the claimant could perform the physical RFC assessed by the state reviewing physicians, stating that a light RFC with postural *and* manipulative limitations was more appropriate, although further sitting and walking limitations were not in light of 2019 treatment records demonstrating normal range of motion (Tr. 29). He further found the mental RFC assessments not persuasive, disagreeing with the assessment that she had moderate limitations in social interaction because she had testified that she attended stomp dances monthly (Tr. 29). He ultimately determined the claimant was not disabled, identifying three light jobs the claimant could perform (Tr. 30-31).

The claimant's first contention is that the ALJ erred by failing to order a consultative examination in this case as to her mental impairments, because there were no examining opinions in the record. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993) (*citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). But the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed,

which, on its face, must be substantial[.]" *Id.* [citation omitted]. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. "Thus, the relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability." *Baraesheia M. P. v. Kijakazi*, 2021 WL 2954003, at *6 (N.D. Okla. July 14, 2021).

Here, the claimant did not raise the issue at the administrative level, and there is nothing in the evidence to indicate that further evaluation was necessary. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). While additional evidence may have been helpful given the sparse evidence in the record other than medication management for her depression, the claimant has not met her burden establishing such necessity here. This is particularly true where, as here, the claimant's own testimony was that her depression was well managed by her medication and that she was largely concerned with her physical impairments and financial situation. *See, e. g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need" to develop the record with a consultative examination where "sufficient information existed" for the ALJ to make the disability determination.).

The claimant next asserts that the ALJ improperly evaluated the evidence at steps two and three, including inserting his own opinion for medical expertise because he did not adopt wholesale any of the evaluations in the record. This is, essentially, a continuation of the claimant's argument that the ALJ failed to develop the record with a consultative examination. Having disposed of the claimant's argument regarding ordering a consultative evaluation, the Court simply notes that any error in finding an additional severe impairment is harmless because the ALJ did find the claimant had other severe impairments, which obligated the ALJ to then consider *all* of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. The undersigned Magistrate Judge notes that he did. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. Furthermore, the claimant made no specific argument as to her assertion that the ALJ erred at step three. *See Padilla v. Colvin*, 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Next, the claimant contends that the ALJ erred in analyzing her subjective statements, particularly as related to her pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4]  Tenth Circuit precedent agrees but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67 (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[5]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and

---

[4] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[5] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

(vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

As outlined above, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. The claimant contends that the ALJ improperly counted her noncompliance against her, but this is not borne out by the record. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his evaluation is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant asserts that the ALJ's RFC is unsupported by substantial evidence, including a failure to consider additional limitations related to her impairments, and *again* contends the ALJ should have ordered a consultative examination. She also appears to assert that this resulted in an error in the identification of jobs she can perform at step five. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an

administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform a limited range of light work. The longitudinal evidence in the record does not reflect further limitations, and the ALJ clearly considered the evidence in the record. It appears the claimant is requesting a consultative examination in the hopes to find such evidence, but this is not supported by the record. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority."). *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably

discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The final contention is therefore without merit.

In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800). The ALJ specifically noted every medical record available in this case, gave reasons for his RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is

therefore legally correct.  The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**